UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEOPOLYMER SINKHOLE
SPECIALIST, INC.,

      Plaintiff,

v.                                       Case No: 8:15-cv-1690-T-36JSS

URETEK WORLDWIDE OY and
POWERPILE PRODUCTS OY,

      Defendants.
_____/

**ORDER ON PLAINTIFF'S MOTION FOR ENTRY
OF AN ORDER DIRECTING SERVICE OF PROCESS ABROAD**

THIS MATTER is before the Court on Plaintiff's Motion for Entry of an Order Directing Service of Process Abroad (Dkt. 5) ("Motion").  Upon consideration, the Motion is granted for the reasons stated below.

**BACKGROUND**

On July 17, 2015, Plaintiff Geopolymer Sinkhole Specialist, Inc. filed a lawsuit against Defendants Uretek Worldwide Oy and Powerpile Products Oy related to Defendants' alleged misconduct during negotiations with Plaintiff concerning the licensing of a patent.  (Dkt. 1.) Plaintiff alleges that Defendants are corporations existing under the laws of Finland that maintain their principal places of business in Finland.  (Dkt. 1 ¶¶ 3-4.)

In the Motion, Plaintiff states that Defendants have not appointed registered agents for service of process in Florida.  (Dkt. 5 at 2.)  As such, Plaintiff is requesting that the Court authorize Plaintiff to effectuate service of process by mail and FedEx, pursuant to Rule 4(f)(2)(C)(ii) of the Federal Rules of Civil Procedure.  Plaintiff also requests that Defendants be ordered to respond to the Complaint within twenty-one days of service.

## APPLICABLE STANDARDS

### I.       Service under Rule 4 of the Federal Rules of Civil Procedure

Rule 4(h) provides that "[u]nless federal law provides otherwise or the defendant's waiver has been filed, a . . . foreign corporation . . . must be served . . . at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual . . . ." Fed. R. Civ. P. 4(h)(2).  Rule 4(f) prescribes three methods for service in a foreign country.  The first method permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).  The second method describes the types of permissible service "if there is no internationally agreed means, or if an international agreement allows but does not specify other means."  Fed. R. Civ. P. 4(f)(2).  This includes "using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt," unless this method of service is "prohibited by the foreign country's law."  Fed. R. Civ. P. 4(f)(2)(C)(ii).  The third method permits service "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).

### II.      Service under the Hague Convention

The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters is a multilateral treaty, to which the United States and Finland are both parties.  Nov. 15, 1965, 20 U.S.T. 361 [hereinafter Hague Convention].  The intention of the Hague Convention is "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).  "[C]ompliance with the Convention is mandatory in all cases to which it applies."  *Id.* at 705.

To achieve this end, the Hague Convention provides the channels of transmission to be used for the service of judicial or extrajudicial documents abroad.   The main channel is set forth in Article 2 and affirmatively requires each contracting country to designate a "central authority" to receive requests for service of documents from other countries.   Articles 3 through 6 establish the procedures for using the central authority and for the central authority to effect service.   Articles 8, 9, and 10 provide alternative channels that may be used if not objected to by contracting countries.   Of particular relevance, Article 10(a) states that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad."

The question of whether the term "send" in Article 10(a) encompasses "service" by mail has been debated by federal courts, and neither the U.S Supreme Court nor the U.S. Court of Appeals for the Eleventh Circuit have addressed the issue.   In one line of the cases, courts have held that the term "send" does not include service of process by mail but, instead, permits parties to send documents (such as motions and discovery requests) via mail after service has been perfected by other means.   *See, e.g., Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 384 (5th Cir. 2002); *Bankston v. Toyota Motor Corp*., 889 F.2d 172, 173-74 (8th Cir. 1989); *Wasden v. Yamaha Motor Co., Ltd*., 131 F.R.D. 206, 208-09 (M.D. Fla. 1990); *In re Mak Petroleum, Inc*., 424 B.R. 912, 918 (Bankr. M.D. Fla. 2010) ("the *Bankston* cases").   These courts, relying on canons of statutory construction, note that there are many provisions in the Hague Convention that use the term "service" and reason that if the drafters had intended to provide for service of process by postal channels in Article 10(a), they would have used "service," not "send."   *See id.*

Conversely, in the other line of cases, courts have held that "the freedom to send judicial documents" includes the service of process.   *See, e.g., Brockmeyer v. May*, 383 F.3d 798, 802-03

(9th Cir. 2004); *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986); *TracFone Wireless, Inc. v. Unlimited PCS Inc*., 279 F.R.D. 626, 630 (S.D. Fla. 2012); *Conax Fla. Corp. v. Astrium Ltd*., 499 F. Supp. 2d 1287, 1293 (M.D. Fla. 2007) ("the *Brockmeyer* cases").  These courts have ruled that such a reading of Article 10(a) is consistent with the purpose of the Hague Convention, which is "to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time."  Hague Convention, Art. 1.  They also note that "[c]ommentaries on the history of negotiations leading to the Hague Convention further indicate that service by mail is permitted under Article 10(a)."  *Brockmeyer*, 383 F.3d at 802-03; *see also Conax*, 499 F. Supp. 2d at 1293.  Additionally, courts have noted that interpreting "send" to mean "serve" is the "essentially unanimous view of other member countries of the Hague Convention."  *Brockmeyer*, 383 F.3d at 802; *see also Conax*, 499 F. Supp. 2d at 1293.

The *Brockmeyer* court further found that, although Article 10(a) encompasses service, it does not affirmatively authorize service via mail.  *Brockmeyer*, 383 F.3d at 803-04.  Rather, Article 10(a) does "not interfere with" the "freedom" to use postal channels if the receiving country does not object.  *Id.*  Therefore, "'in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state.'"  *Id.* at 804 (quoting 1 Bruno A. Ristau, International Judicial Assistance § 4–3–5, at 205 (2000) (quoting the Service Convention Negotiating Document)).  "Any affirmative authorization of service by international mail, and any requirements as to how that service is to be accomplished, must come from the law of the forum in which the suit is filed."  *Id.*  This view has also been adopted by courts in this District.  *See Conax*, 499 F. Supp. 2d at 1293; *Julien v. Williams*, No. 8:10-cv-2358-T-24TBM, 2010 WL 5174535, at *2 (M.D. Fla. Dec. 15, 2010).

In the United States, service via mail is affirmatively authorized by Rule 4(f) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(f)(2)(C)(ii) (permitting service using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt); Rule 4(f)(3) (permitting service via mail, if authorized by a court); *see also Brockmeyer*, 383 F.3d at 803-06; *Julien*, 2010 WL 5174535, at *2. Thus, a plaintiff located in the United States may serve process via mail on a foreign defendant located in a country that is a signatory of the Hague Convention if (1) the receiving country does not object and (2) service by mail is performed in accordance with either Rule 4(f)(2)(C)(ii) or Rule 4(f)(3). *See Julien*, 2010 WL 5174535, at *2 ("[T]his Court finds that if Rule 4(f) authorizes service by mail, and if the receiving country does not object to Article 10(a), then the Hague Convention will not interfere with such service (and thus, will not deem it to be improper).").

The Permanent Bureau of the Hague Conference on Private International Law ("Permanent Bureau") agrees with the *Brockmeyer* cases that "send" encompasses "service." *See* PERMANENT BUREAU OF THE HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, PRACTICAL HANDBOOK ON THE OPERATION OF THE HAGUE SERVICE CONVENTION ¶ 223 (3d ed. 2006) [hereinafter Practical Handbook]. The Permanent Bureau specifically rejects the *Bankston* cases, noting "neither the letter nor the history of the Hague Conventions can be used to support the approach applied in *Bankston*." *Id.* ¶¶ 222, 223. The Permanent Bureau notes that "[s]pace does not allow us to refer to the numerous decisions of other States expressly supporting the view that Art. 10(a) allows for service of process." *Id.* ¶ 217, n.275. As such, the Permanent Bureau recognizes that "[s]ervice by mail under Article 10(a) is effective if (i) service by mail is allowed by the law of the State of origin and all the conditions imposed by that law for service by mail have been met, and (ii) the State of destination has not objected to the use of Article 10(a)." *Id.* ¶ 201.

Additionally, when a Special Commission met in the Hague in 2003 to review the practical operation of the Hague Convention, the Commission "reaffirmed its clear understanding that the term 'send' in Article 10(a) is to be understood as meaning 'service' through postal channels." Permanent Bureau of the Hague Conference on Private International Law, *Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions* ¶ 55 (2003) [hereinafter Special Commission].

## ANALYSIS

Plaintiff seeks to serve process on Defendants in Finland via mail. Both Finland and the United States are signatories to the Hague Convention, therefore, service of process on Defendants in Finland must conform to the requirements of the Hague Convention.

This Court is more persuaded by the *Brockmeyer* cases and finds that use of the term "send" in Article 10(a) encompasses service of process. Such an interpretation is consistent with the overarching purpose of the Hague Convention and is also in keeping with the views of other contracting countries, the Permanent Bureau, and the Special Commission.

Pursuant to Article 10(a), Plaintiff may serve process via mail only if Finland has not objected to this method of service. Finland has stated "no opposition" to Article 10(a). *See Finland – Central Authority & Practical Information*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, http://www.hcch.net/index_en.php?act=authorities.details&aid=255 (last updated July 21, 2014). Accordingly, Plaintiff may serve process on Defendants in Finland via postal channels, so long as Plaintiff does so in accordance with Rule 4.

Plaintiff specifically requests permission to serve process pursuant to Rule 4(f)(2)(C)(ii), which provides that, "unless prohibited by the foreign country's law," service may be achieved "using any form of mail that the clerk addresses and sends to the individual and that requires a

signed receipt." Per Finland's Ministry of Justice, as it relates to the service of documents, "Finland allows postal service within its territory." *Service of Documents*, MINISTRY OF JUSTICE, FINLAND, http://oikeusministerio.fi/en/index/basicprovisions/kansainvalisetjaeu-asiat/internationallegalassistance/civilmatters/serviceofdocuments.html (last updated Jan. 7, 2010). Additionally, in Finland's response to the 2008 Hague Conference questionnaire on the practical operation of the Hague Convention, Finland stated, with regard to service via postal channels under Article 10(a), that "normally the postal channel is used primarily, if possible." *Questionnaire of July 2008 relating to the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW ¶ 43 (2008), http://www.hcch.net/upload/wop/2008finland14.pdf [hereinafter Finland Questionnaire]. Because Finland does not prohibit service via postal channels, Plaintiff may serve process on Defendants in Finland pursuant to Rule 4(f)(2)(C)(ii).

Plaintiff requests that service be accomplished via both United States Postal Service international mail and FedEx.[1] Other courts have recognized that use of a private courier service, such as FedEx, complies with the requirements of Rule 4(f)(2)(C)(ii) and Article 10(a). *See, e.g., Barriere v. Cap Juluca*, No. 12-23510-CIV, 2014 WL 652831, at *3 (S.D. Fla. Feb. 19, 2014); *IntelliGender, LLC v. Soriano*, No. 2:10-CV-125-JRG, 2012 WL 215066, at *2 (E.D. Tex. Jan. 24, 2012) ("Nothing indicates—from the Rule on its face—that any form of mail means that service may only be effected using United States mail. Based on a plain reading of the statute, Rule 4(f)(2)(C)(ii) permits service via any form of signed receipt mail, including Federal Express."). Further, the Special Commission concluded that, for purposes of Article 10(a), the use of a private

---

[1] FedEx ships packages to Finland. *See FedEx Express International Countries Served and Not Served*, FEDEX, http://www.fedex.com/gb/contact/served-countries.html (last visited Aug. 12, 2015).

courier is the equivalent of a postal channel.  Special Commission ¶ 56.  Finland has also stated that it allows private courier services to be used for service of judicial documents under Article 10(a).  *See* Finland Questionnaire ¶ 44.  This Court agrees that service via FedEx, requiring a signed receipt, is permissible under Rule 4(f)(2)(C)(ii).

Finally, Plaintiff requests that Defendants be directed to respond to the Complaint within twenty-one days after receipt of the Summons and Complaint.  Rule 12 of the Federal Rules of Civil Procedure provides that a defendant must serve a responsive pleading "within 21 days after being served with the summons and complaint."  Fed. R. Civ. P. 12(a)(1)(A)(i).  The Court finds no basis to stray from this rule and directs Defendants to serve their responses to the Complaint within twenty-one days after being served.  Of course, if Defendants timely waive service under Rule 4(d), Defendants will have ninety days after the request for a waiver was sent to serve their responses.  *See* Fed. R. Civ. P. 12(a)(1)(A)(ii).  Accordingly, it is

**ORDERED:**

1.     Plaintiff's Motion is **GRANTED**.  The Clerk shall serve each Defendant, by sending via United States Postal Service International Mail and FedEx to each Defendant one copy of: (1) the Complaint; (2) the Summons; (3) the Civil Cover Sheet; and (4) a copy of this Order.

2.     Defendants' responses to the Complaint shall be due twenty-one (21) days after receipt of copy of the Summons and Complaint.

**DONE** and **ORDERED** in Tampa, Florida on August 12, 2015.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record